```
                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
                        SAN ANTONIO DIVISION
```

| | |
|---|---|
| RONALD ROBINSON, Individually and on behalf of all others similarly situated; BRYANT ROBERSON, CHRIS MARTINEZ, DANIEL BUSCH, FABIAN TREVINO, BTYCE GOLIGHTLY and DUSTIN SMITH,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>RWLS, LLC, D/B/A Renegade Services; MATTHEW GRAY and RANDY CASSIDY,<br><br>　　　　　Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*   CIVIL NO. SA-16-CA-00201-OLG<br>*<br>*<br>*<br>*<br>*<br>* |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Ronald Robinson, now joined by other plaintiffs, filed this collective action on February 25, 2016, alleging that he and others similarly situated were employed by the defendants and were not paid overtime wages in violation of the Fair Labor Standards Act ("FLSA"). (Docket no. 1). On January 4, 2017, the Court authorized the filing of a Second Amended Complaint. (Docket no. 61). Plaintiffs have filed a Motion for Notice to Potential Plaintiffs and Conditional Certification (docket nos. 37 and 49), to which motion defendants have responded. (Docket no. 45).

## BACKGROUND

Defendant RWLS, LLC, d/b/a Renegade Services ("RWLS") is an oilfield wireline service company servicing the oil and gas

industry in the State of Texas and throughout the United States. **Second Amended Complaint,** ¶ 5.1.  Defendants Matthew Gray and Randy Cassidy maintained operational control (including both economic and decisional control) of significant aspects of RWLS's day-to-day functions. **Id.**, ¶¶ 2.4, 2.5.  Defendants are sued as joint employers.  Plaintiffs and the Potential Class Members are those persons who worked for defendants within the last three years and were paid a fixed salary plus a non-discretionary job bonus/day rate for all hours worked in the field, but did not receive overtime for all hours worked over forty (40) in each work week.  **Id.**, ¶ 1.2.  The proposed class of similarly-situated employees, i.e. Potential Class Members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined as "All field personnel, including but not limited to riggers, operators, engineers in training, and engineers, employed by Defendants from September 2013 to the present who were paid on a salary-plus-bonus basis."  Plaintiffs and the Potential Class Members seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to § 216(b).

## APPLICABLE LAW

In their Motion for Notice to Potential Plaintiffs and Conditional Certification, plaintiffs allege that defendants employ oilfield workers, including, but not limited to riggers,

2

operators, engineers in training, and engineers ("Oilfield Workers" or "OWs") to perform nonexempt work, including preparing, maintaining and/or operating oilfield equipment, and pay OWs pursuant to a salary-plus-bonus pay scheme that denies overtime despite OWs regularly working overtime. Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. **29 U.S.C. § 207(a)**. Section 216(b) creates a cause of action against employers who violate the overtime compensation requirements. **29 U.S.C. § 216(b)**. Section 216(b) also permits an employee to bring suit against an employer on "behalf of himself ... and other employees similarly situated." *Id.*

In determining whether to certify a collective action pursuant to **29 U.S.C. § 216(b)**, the Court employs the two stage test set forth in ***Lusardi v. Xerox Corp.***, 118 F.R.D. 351 (D.N.J. 1987).[1] ***Mooney v. Aramco Servs. Co.***, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by* ***Desert Palace, Inc. v. Costa***, 539 U.S. 90, 90-91 (2003); *see also **Vallejo v. Northeast I.S.D.***, No. SA-12-CV-270-XR, 2012 WL 5183581, at *1 (W.D.Tex.

---

[1] The Fifth Circuit Court of Appeals has also affirmed cases applying the standard set forth in Fed.R.Civ.P. 23 through which district courts evaluate FLSA collective actions against the well-established requirements of numerosity, commonality, typicality, and adequacy. ***See Portillo v. Permanent Workers, L.L.C.***, No. 15-30789, 2016 WL 6436839, at *3 (5th Cir. Oct. 31, 2016). Neither standard has been endorsed or approved by the Court of Appeals. *Id.* However, the majority of courts within the Fifth Circuit has adopted the ***Lusardi*** two-stage approach. ***Snively v. Peak Pressure Control, LLC***, 174 F.Supp.3d 953, 957 (W.D.Tex. 2016).

Oct. 17, 2012)(explaining that while the Fifth Circuit has not adopted a specific test for determining whether to certify a collective action under **29 U.S.C. § 216(b)**, the prevailing analysis used by federal courts is the *Lusardi* two-stage test); *Vargas v. HEB Grocery Co., LP*, No. SA-12-CV-116-XR, 2012 WL 4098996, at *3 (W.D.Tex. Sept. 17, 2012).

In *Mooney*, the Fifth Circuit explained the *Lusardi* analysis as follows:

> The first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-- i.e. the original plaintiffs--proceed to trial on their individual claims.

*Mooney*, 54 F.3d at 1213-14.

The potential class must be "similarly situated" to the named plaintiff(s) in order for the Court to find that conditional certification is appropriate. To make this determination, the Court looks only to the pleadings and affidavits. *Mooney*, 54 F.3d at 1213-14. Plaintiffs bear the burden of demonstrating that they are similarly situated. *Yair Granados v. Hinojosa*, No. A-15-CV-787-LY, 2016 WL 7108133, at *1 (W.D.Tex. Nov. 28, 2016). "The decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the District Court." *Espinosa v. Stevens Tanker Div., LLC*, SA-15-CV-879-XR, 2016 WL 4180027, at *2 (W.D.Tex. Aug. 5, 2016)(*quoting* *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *see also* **29 U.S.C. § 216(b);** *Mooney*, 54 F.3d at 1213–14.

Further, the standard for determining whether the potential class of plaintiffs is "similarly situated" is a lenient one and, generally, the request for conditional certification is granted. *Mooney*, 54 F.3d at 1214; *see also Vallejo*, 2012 WL 5183581, at *1. As the Fifth Circuit noted in *Mooney*, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Id.*, 54 F.3d at 1214, n.8 (*quoting* *Sperling v. Hoffman-La Roche, Inc.*,

5

118 F.R.D. 392, 407 (D.N.J. 1988)). At this stage, courts generally refuse to consider a defendant's arguments on the merits. *Yair Granados*, 2016 WL 7108133, at *2.

## DISCUSSION

### I. Motion for Conditional Certification

Plaintiffs seek to conditionally certify a class of "All field personnel, including but not limited to riggers, operators, engineers in training, and engineers, employed by Defendants from September 2013 to the present who were paid on a salary-plus-bonus basis." Plaintiff Ronald Robinson provides a Declaration indicating that he was employed by defendants as an oilfield worker, and specifically as a Rigger and Operator, from approximately December 2013 to October 2014. His job was to perform oilfield labor services, including the preparation, maintenance and operation of oilfield equipment. Robinson states that, despite regularly working well in excess of 40 hours per week, he never received overtime pay. Instead, defendants paid him a base salary and non-discretionary job bonuses/day rates that failed to compensate him for overtime work. According to Robinson, approximately 25 to 30 Riggers and Operators (collectively, "Oilfield Workers") in defendants' Andrews, Texas location alone performed the same or similar duties while he was so employed and were also paid a base salary

6

plus job bonus compensation plan that did not provide overtime pay for overtime hours worked.

Ryan Waygood attests that he was employed by defendants as an oilfield worker, and specifically as an Operator, from approximately August 2013 to September 2014. His job was to perform routine oilfield labor services, including the preparation, maintenance and operation of various pieces of oilfield equipment. Waygood states that, despite regularly working well in excess of 40 hours per week during his employment, he never received overtime pay. Instead, defendants paid him a base salary and non-discretionary job bonuses/day rates that failed to compensate him for overtime work. According to Waygood, approximately fifty Riggers, Lead Riggers, Operators, Lead Operators, Engineers-in-Training and Engineers (collectively, "Oilfield Workers") in defendants' Levelland, Texas location alone performed the same or similar duties while he was so employed and were also paid a base salary plus job bonus compensation plan that did not provide overtime pay for overtime hours worked. Waygood identifies several potential plaintiffs by name. Other plaintiffs provide similar affidavits: Fabian Trevino, a Rigger; Dustin Davenport, an Operator; Dan Busch, a Rigger and Lead Rigger; Chris Martinez, an Engineer; and Bryant Roberson, a Rigger, Operator, and Engineer-In-Training.

7

Defendants contend initially that plaintiffs' class definition is vague, ambiguous and open-ended. They state that the positions identified have different job duties. Defendants argue that plaintiffs offer no evidence concerning the job duties, responsibilities, compensation, benefits or other terms and conditions of employment for any position, e.g., Engineers, Engineers in Training, Shop Hands, other than Riggers/Operators and Pressure Control Operators. At most, should the Court grant conditional certification, defendants contend it should be limited to a class of Riggers/Operators and Pressure Control Operators.

In ***Mathis v. Stuart Petroleum Testers, Inc.***, No. 5:16-CV-094-RP, 2016 WL 4533271, at *2 (W.D.Tex. Aug. 29, 2016), plaintiff sought conditional certification of "[a]ll of [Stuart Petroleum's] former and current Pump Supervisors and/or Field Supervisors (or similar positions)." Plaintiff described the basic tasks of both jobs as "maintain[ing] and operat[ing] the equipment used at the oilfield well sites." The District Court found that plaintiff's bare assertions about what the job of a pump supervisor and field supervisor entailed were too vague for the Court to determine that other employees in the same positions performed the same basic tasks, which prevented the Court from being able to conclude that members of the proposed class were similarly situated to plaintiff. ***Id***. The District

8

Court noted that plaintiff did not explain what equipment a pump supervisor or field supervisor would regularly use, what other types of employees they would work with, or what specific tasks they would perform. *Mathis*, 2016 WL 4533271, at *2.

Significantly, the District Court found that plaintiff's description of the job duties— "maintain[ing] and operat[ing] the equipment used at the oilfield well sites"— was instead so broad that it could include nearly any worker performing some manual labor at a well site, even if that worker had vastly different job duties than those of the plaintiff. *Id*. The District Court also criticized plaintiff's inclusion of pump supervisor or field supervisor to those in "similar positions." *Id.*, at *3. The District Court found that, "without more 'identifiable facts' about the job requirements and duties of the members of Plaintiff's proposed class, the Court [could not] conclude class members [were] similarly situated, such 'that hearing the cases together [would] promote [ ] judicial efficiency.'" *Id*. (*quoting* **McKnight v. D. Houston, Inc.**, 756 F.Supp.2d 794, 801 (S.D.Tex. 2010)).

Despite *Mathis*, the Court finds that plaintiffs' proposed class should be conditionally certified. As noted in *Mooney*, *Lusardi* requires the Court to apply a "fairly lenient standard," and "typically results in 'conditional certification' of a representative class." *Mooney*, 54 F.3d at 1214. At the notice

9

stage, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Mooney*, 54 F.3d at 1214, n.8 (*quoting Sperling*, 118 F.R.D. at 407). *Mathis* overemphasizes similarity of job duties instead of focusing on the alleged wrongful policy. Different job classifications and responsibilities of members of the putative class are not materially relevant differences under the first stage of the two-step certification process. *See Behnken v. Luminant Min. Co., LLC*, 997 F.Supp.2d 511, 522 (N.D.Tex. 2014). The employees are similarly situated because they were subjected to the same allegedly unlawful practice. *Id*. Plaintiffs have provided substantial evidence that Riggers, Operators, Engineers in Training, and Engineers employed by defendants were paid on a salary-plus-bonus basis which deprived them of overtime compensation.

The Court is aware of no requirement that each job category of oilfield workers file its own FLSA lawsuit once they have demonstrated they have been/are being subjected to the same allegedly unlawful policy. A class of several positions of oilfield workers was conditionally certified in *Hart v. Sandridge Energy, Inc.*, No. CIV-14-178-R, 2014 WL 2983358, at *2 (W.D. Okla. July 1, 2014). In the present case, the evidence submitted by plaintiffs indicates that the individual plaintiffs

10


are oilfield workers in identifiable categories performing the same or similar duties who were subject to the same base salary plus job bonus compensation plan that did not provide overtime pay for overtime hours worked. Evidence of similar job duties and of a single policy has been held to be sufficient to conditionally certify a class. *Yair Granados*, 2016 WL 7108133, at *3. Defendants will have ample opportunity to seek to decertify the class following discovery, when the question before the Court is whether plaintiffs are, in fact, similarly situated. *Id*.

Defendants also assert plaintiffs offer no evidence of a centralized plan. They further claim that plaintiffs' proposed class fails to match the class alleged in his Second Amended Complaint. Defendants argue that plaintiffs' motion for certification seeks to broaden the pay practices that would entitle an individual to join the class to include anyone paid a salary who was also paid any type of bonus. The Court does not agree. The affidavits indicate that the plaintiffs and proposed class were paid a compensation plan consisting of a base salary plus *job* bonuses that did not provide overtime pay for overtime hours worked. In their reply, plaintiffs reassert that their class definition "as it includes job bonuses categorically only includes those employees working in the field and being improperly compensated."

In opposing conditional certification, defendants also contend that different defenses will apply, including potentially the Motor Carrier Exemption, which applies more to some job classifications but potentially not others. While defendants may very well be entitled to this affirmative defense, "[t]he application of the Motor Carrier Act exemption goes to the merits of whether the [Operators and Field Supervisors] are exempt from overtime pay" and is an insufficient basis for denying conditional certification and notice. ***Albanil v. Coast 2 Coast, Inc.***, No. CIV.A. H-08-486, 2008 WL 4937565, at *7 (S.D.Tex. Nov. 17, 2008)(*citing* ***Foraker v. Highpoint S.W. Servs., L.P.***, No. H-06-1856, 2006 WL 2585047, at *4 n. 16 (S.D.Tex. Sep. 7, 2006)(finding defendants' assertion of an exemption goes to the merits and is not a persuasive basis to preclude conditional certification and notice)).

Defendants also allege that, given the differences, if there was a finding of liability, the Court would have to make individualized inquiries on damages. Most courts have held that in off-the-clock unpaid-overtime cases, the need to determine class members' damages on an individualized basis should not bar conditional certification if the proposed class is otherwise similarly situated. ***Corcione v. Methodist Hosp.***, No. G-14-160, 2014 WL 6388039, at *5 (S.D.Tex. Nov. 14, 2014). Finally,

12

defendants assert the class period is improper given the Court's dismissal of plaintiffs' claim that defendants acted willfully and the fact that plaintiffs' second amended complaint has not yet been tested under Rule 12.  In granting plaintiffs leave to file their second amended complaint (docket no. 61), the Court determined that the amendment was not futile and, therefore, did not fail to state a claim upon which relief could be granted as regards willfulness.  Any further litigation of that issue would be futile.

**II. Motion for Notice to Potential Plaintiffs**

To facilitate the notice process, plaintiffs seek supervised notice to the potential plaintiffs in a proposed Notice (Exhibit A) based on notices approved and issued in other cases.  Defendants object, arguing that plaintiffs have made every effort to identify and recruit potential plaintiffs, such as maintaining a website for the purpose of recruiting potential plaintiffs and mailing written communications directly to putative class members.  Given the fact that plaintiffs are believed to have been recruiting potential opt-ins for months – and especially considering, according to defendants, that plaintiffs' communications are objectionable for the same reasons that plaintiffs' proposed notice is objectionable – defendants contend the Court should not authorize what amounts to a second or even third form of notice.

In the event the Court determines that notice is appropriate in this case, defendants contend plaintiffs' proposed notice is improper for several reasons. Defendants argue that if notice is issued to those for whom plaintiffs have been recruiting for months, the opt-in notice period should be restricted to, at most, ten (10) business days. They also contend that plaintiffs have not demonstrated a need for the potential class members' telephone numbers. Defendants allege that plaintiffs' proposed notice erroneously directs potential class members to contact plaintiffs' counsel when, instead, potential opt-in plaintiffs should be free to use any counsel they desire. Defendants also assert that plaintiffs' proposed notice should direct potential class members to send their opt-in consent forms directly to the Court's attention.

Defendants argue that, because any notice will be sent to potential class members with the imprimatur of the Court, it should be neutral, balanced, and "accurate and informative." They state that plaintiffs' proposed notice does not inform potential class members that they are only potentially eligible to participate in the lawsuit subject to the Court's determination that they are "similarly situated" to plaintiffs under 29 U.S.C. § 216(b). In other words, the proposed notice does not recognize defendants' right to bring a motion to decertify any class conditionally certified. Additionally,

14

defendants claim the "Am I Eligible" section is inaccurate. Defendants further allege that any notice should provide potential class members with sufficient information to allow them to make an informed decision about whether to affirmatively join the lawsuit such as the fact that potential opt-in plaintiffs may be required to respond to written questions, sit for depositions and/or testify in court.

According to defendants, in the "What Can I Get" section, the proposed notice fails to indicate that potential class members could take nothing in this action and that they could be liable for costs. Defendants allege that the proposed notice erroneously asserts that "the lawsuit claims that Renegade: Misclassified oilfield workers as exempt from overtime and paid them on a salary basis without providing overtime compensation for hours worked over 40 per workweek." In fact, plaintiffs' second amended complaint makes no allegation of misclassification. Finally, defendants contend that, should the Court determine notice is warranted, plaintiffs' notice should be limited to only current and former Riggers/Operators and/or Pressure Control Operators (the jobs plaintiff held); and, also, limited in scope to those who were employed by Renegade from two (2) years prior to the date notice is issued. Defendants submit that plaintiffs' proposed notice should be rejected in favor of a negotiated notice.

Defendants cite no authority indicating that court-authorized notice is discretionary simply because plaintiffs and/or plaintiffs' counsel have made pre-certification efforts to contact proposed class members. To this Court's knowledge, once the "similarly-situated" test is satisfied and conditional certification is granted, notice must be sent to the proposed class in one form or another. *See Behnken*, 997 F.Supp.2d at 522(the fact that some potential plaintiffs have been notified does not cut against court-facilitated notice). Also, the Court has already determined the composition and the length of time for the class. As far as the remaining objections, the parties are directed to confer and submit agreed notice and consent forms in conformity with this Memorandum and Recommendation within fourteen (14) days from the District Court's Order, bearing in mind notices and consents that have been approved in similar cases. *See Alford et al. v. Freedom Oilfield Servs., LLC, et al.*, SA-16-CA-331-DAE (docket nos. 20 and 23); *Keppard Jr. et al. v. C.C. Forbes, LLC et al.*, SA-15-CA-625-FB (docket nos. 46 and 52); *Ahoyt v. Native Oilfield Servs., LLC, et al.*, SA-15-CA-262-FB (docket nos. 26 and 33). The parties are advised that consent forms **should not** be filed with the Court; instead, the notice should provide that consent forms be mailed to counsel for plaintiffs or some other third party agreed upon by the parties.

**RECOMMENDATION**

It is the recommendation of the Magistrate Judge that plaintiffs' Motion for Conditional Certification be **GRANTED,** and that the following class be conditionally certified: "All field personnel, including but not limited to riggers, operators, engineers in training, and engineers, employed by Defendants from September 2013 to the present who were paid on a salary-plus-job bonus basis."

Additionally the undersigned further recommends that plaintiffs' Motion for Notice to Potential Plaintiffs be **GRANTED in part** subject to further negotiation by the parties.

**Instructions for Service and
Notice of Right to Object**

The District Clerk shall serve a copy of this Memorandum and Recommendation on all parties either electronically or by mailing a copy by certified mail, return receipt requested. Pursuant to **28 U.S.C. § 636(b)(1)** and **Fed.R.Civ.P. 72(b)(2),** any party who desires to object to this Memorandum and Recommendation must serve and file specific written objections within 14 days after being served with a copy. Such party shall file the objections with the District Clerk and serve the objections on all other parties and the Magistrate Judge. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within

14 days after being served with a copy shall bar that party from de novo review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of factual findings and legal conclusions to which the party did not object, which were accepted and adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    **SIGNED** January 11, 2017.

_____
**JOHN W. PRIMOMO**
**UNITED STATES MAGISTRATE JUDGE**